**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MARIANNE KUBIK WYPY,<br>*Plaintiff*,<br><br>v.<br><br>STEVEN P. CIARDIELLO, ET AL.,<br>*Defendants*. | No. 3:25-cv-00822 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Marianne Wypy ("Plaintiff") has sued Steven Ciardiello, Andrew Cota, and Vincent Marino ("Defendants") for allegedly violating her Fourth, Fifth, and Fourteenth Amendment constitutional rights under 42 U.S.C. § 1983, and additionally, makes a claim under 42 U.S.C. § 1986 related to the death of her late husband. Mrs. Wypy also alleges violation of numerous state laws including Conn. Gen. Stat. §7-148 (c)(7)(H)(xi); Conn. Gen. Stat. §29-393; Conn. Gen. Stat. §7-148(c)(7)(H)(xv); Conn. Gen. Stat. §49-31n. She seeks monetary damages related to a residential property, and the pain and suffering and other damages allegedly experienced by her and her late husband.

Mr. Ciardiello has moved to dismiss her Complaint. Def.'s Mot. to Dismiss, ECF No. 22.[1]

For the following reasons, the motion to dismiss is **GRANTED**.

To the extent that the deficiencies described in this Ruling and Order can be remedied, Mrs. Wypy may seek leave to file a Second Amended Complaint by **October 30, 2026.**

[1] Rather than file a motion to dismiss the Complaint, Mr. Cota and Mr. Marino filed a motion for a more definite statement. Mot. for More Definite Statement, ECF No. 21 (Sep. 15, 2025). As discussed below, because the substance of this Ruling and Order provides guidance as to the deficiencies in the constitutional claims against them, the Court need not address the substance of that motion at this time, and instead will deny that motion without prejudice. If, following the passage of the deadline for Mrs. Wypy to seek leave to file a Second Amended Complaint, Mrs. Wypy does not file a Second Amended Complaint, the claims against Mr. Cota and Mr. Marino remain as presently charged, and these Defendants still cannot discern the basis for these claims, sufficient to seek relief other than through a motion for a more definite statement, then such a motion may be renewed.

If a motion for leave to file a Second Amended Complaint is not filed by **October 30, 2026**, or that deadline is not otherwise extended by further order of this Court, then the claims against Mr. Ciardiello will be dismissed with prejudice, although the claims against Mr. Cota and Mr. Marino shall remain.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

For a number of years, Marianne Wypy co-owned a house at 20 Clark Street in Derby, Connecticut, Complaint at 2, 4, ECF No. 1 (May 21, 2025) ("Compl."), with her husband Lawrence Wypy, who died in October 2020. *Id.* at 5.

On September 23, 2010, the Wypy property was placed on a list of "Blighted properties" due to a violation of Derby's "blight ordinances." *See* Ex. A. to Am. Compl., *Ion Bank v. Lawrence M. Wypy et al.*, No. AAN-CV19-6034590-S (Conn. Super. Ct. Feb. 21, 2025). ("Foreclosure Action Ex. A"). The City of Derby ("Derby") delivered notice to the Wypys on September 27, 2010, regarding this alleged violation. *Id.* No response from the Wypys allegedly was received. *Id.* Derby delivered notice regarding the violation again on January 19, 2011, noting that the "conditions cited had not been corrected." *Id.* Derby allegedly received no response from the Wypys. *Id.* The Wypys allegedly did not request a hearing with Derby regarding the violations and Derby deemed the violations admitted. *Id.*

In an attempt to resolve the roof issues which led to the violations Mr. and Mrs. Wypy applied for funding through the "Small Cities Grant" program administered by the U.S. Department of Housing and Urban Development at some point in 2011 or 2012. Attach. to Compl. at 1, ECF No. 1 (May 21, 2025) ("Attach. to Compl."). In February 2013 a representative

associated with the grant's administration visited the Wypys, but there was no subsequent communication and funding never materialized. *Id.*

On January 5, 2012, Derby issued a 'Notice of Blight Assessment and Lien' and assessed a fine of $100 per day on the Wypys beginning on September 27, 2010, and continuing through the date of the notice, January 5, 2012. Foreclosure Action Ex. A at 2. The fines totaled $46,500 for the period between September 27, 2010, and January 5, 2012. *Id.* Although Mrs. Wypy allegedly has seen documentation which suggests that $46,500 would be sufficient to discharge the "invalid lien," Mrs. Wypy allegedly has also "received correspondence from [the] City of Derby attempting to collect" close to $500,000. Attach. to Compl. at 1.

For several years following the initial notice, the conditions giving rise to the violations allegedly were not resolved which allegedly "violated the terms of the mortgage," and allegedly caused the bank note executed to obtain the mortgage to go into default. Def.'s Mem. in Supp. of Mot. to Dismiss at 2–3, ECF No. 22 (Oct. 14, 2025) ("Mem. in Supp. of Mot. to Dismiss").

On April 22, 2019, Derby allegedly sent another notice to the Wypys notifying them that the property was still in violation of the city's code. *See* Foreclosure Action Ex. A.

On May 13, 2019, Derby's Fire Marshal and Andrew Cota, the City Inspector[2], allegedly filed an application for an administrative search warrant. Attach. to Compl. at 1. Derby cited the condition of the roof and "a new coat of paint" as the basis for the "blight lien." *Id.* On May 21, 2019, the Wypy's neighbors allegedly called to inform them that police cars were parked outside of their home. *Id.* On the same day Mr. Cota allegedly hand delivered an immediate order to vacate

---

[2] The Court acknowledges that Mr. Cota's official title may not have been 'City Inspector' and may instead have been 'Blight Officer' or another similar title. For purposes of assessing the motion to dismiss, Mrs. Wypy's allegations regarding his title are assumed to be true. *See York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

to the Wypys. *Id.* The order was allegedly issued by Derby's Fire Marshal and was dated May, 21, 2013. *Id.* On May 21, 2019, the electricity at the Wypy property was shutoff and signage labeling the property as "unsafe" was posted around the property. *Id.* at 2. These signs were posted by Mr. Cota after he executed a search warrant with police at the Wypy property. *Id.*

On several occasions in 2019 including on June 7, 2019, Mr. and Mrs. Wypy allegedly sought guidance from city officials, including the mayor, about how to repair the roof and "remediate" the issues causing the blight but they were given no direction. *Id.* Mr. Cota represented that "the issues of the lien would be brought before the "Blight Committee" during a January 2020 meeting but Mrs. Wypy alleges that the meeting did not occur as scheduled, and the COVID-19 pandemic and related quarantine mandates caused future meetings to be canceled. *Id.* Mrs. Wypy is not certain whether the issue was ever brought before the appropriate committee. *Id.*

On May 20, 2019, Mr. Ciardiello on behalf of Ion Bank,[3] "generated a letter . . . demanding payment for the balance of the mortgage principal." *Id.* at 1. Ion Bank ultimately "elected to accelerate the balance due on the Note and foreclose the mortgage to secure the Note." Mem. in Supp. of Mot. to Dismiss at 3. Ion Bank initiated proceedings against the Wypys on July 29, 2019, and filed a summons and complaint in Connecticut Superior Court. A final judgment of foreclosure by sale was entered on February 21, 2025. *Ion Bank v. Lawrence M. Wypy et al.*, No. AAN-CV19-6034590-S (Conn. Super. Ct. Feb. 21, 2025). Mrs. Wypy appealed and the case is now pending before the appellate court. Attach. to Compl. at 3.

At some point between 2019 and the present, the property was appraised. Attach. to Compl. at 2. The appraisal states that the house was condemned but Mrs. Wypy alleges that she never received notification from Derby that the house was condemned. *Id.* The appraisal was filed on

[3] Ion Bank has since become Nutmeg Holdings, LLC. *See* Mem. in Supp. of Mot. to Dismiss at 2.

January 7, 2020. *Id.* Mrs. Wypy alleges that the appraisal was not "presented" at the appropriate time. *Id.* Mrs. Wypy further alleges that Mr. Ciardiello and Mr. Marino described the home as condemned during hearings related to the foreclosure action on January 6, 2020, and January 9, 2020. *Id.*; Mem. in Supp. of Mot. to Dismiss at 4.

Since May 21, 2019, Mrs. Wypy allegedly has been living in her car in the driveway of the property "to maintain occupancy of the property." Compl. ¶ 4. She has allegedly been unable to live in the house because the electricity was shut off. *Id.* Mrs. Wypy allegedly has had to purchase all her meals because she allegedly does not have electricity at home. *Id.* Mrs. Wypy alleges that she has caught "unnecessary illness, including COVID-19" due to increased public exposure at grocery stores and other storefronts in an effort to maintain "some standard of living" without electricity. *Id.* Mrs. Wypy also alleges that sleeping upright in the car, "limited access to water," and lack of access to "bathroom facilities" has caused her to suffer "physical damages." *Id.*

Mr. Wypy allegedly was diabetic and allegedly was unable to wash his feet every day because of the Wypy's living conditions. *Id.* He developed a blister on his foot which led to his hospitalization in September 2020. *Id.* Mr. Wypy allegedly passed away in October 2020. *Id.*

Mrs. Wypy alleges that an agreement exists between Derby and Nutmeg Holdings, LLC (formerly Ion Bank) which states that Derby "would accept $5,000 in full satisfaction of its liens" if "the property was transferred by either Strict Foreclosure or Foreclosure by sale out of the Wypy's name by someone that will address the condition of the property." Attach. to Compl. at 3.

On May 28, 2024 "the City of Derby initiated a foreclosure against the Wypys and Nutmeg Financial Holdings, LLC related to several blight liens issued on the [p]roperty." Mem. in Supp. of Mot. to Dismiss at 3; *City of Derby v. Lawrence M. Wypy et al.*, No. AAN-CV24-6056318-S (Conn. Super. Ct. filed May 28, 2024).

### B. Procedural History

On May 21, 2025, Mrs. Marianne Wypy filed this Complaint against Mr. Steven P. Ciardiello, Mr. Vincent M. Marino, and Mr. Andrew Cota. Compl., ECF No. 1.

On September 9, 2025, Mr. Ciardiello filed a motion for extension of time to plead. Mot. for Ext. of Time to Plead, ECF No. 13.

On September 15, 2025, Mr. Cota and Mr. Marino filed a motion for a more definite statement. Mot. for More Def. Statement, ECF No. 21.

On October 14, 2025, Mr. Ciardiello filed a motion to dismiss. Mot. to Dismiss, ECF No. 22.

On November 4, 2025, Mrs. Wypy filed a motion for extension of time to file a response to Mr. Ciardiello's motion to dismiss. Mot. for Ext. of Time, ECF No. 29.

On November 6, 2025, the Court granted Mrs. Wypy's motion for extension of time to respond to the motion to dismiss. Nov. Order, ECF No. 30.

On December 15, 2025, Mrs. Wypy filed a second motion for extension of time to file a response to the motion to dismiss. Second Mot. for Ext. of Time, ECF No. 32.

On December 15, 2025, Mrs. Wypy also filed a motion for extension of time to file a response to the motion for more definite statement. Third Mot. for Ext. of Time, ECF No. 33.

On December 16, 2025, the Court granted Mrs. Wypy's second motion for extension of time to respond to the motion to dismiss and her motion for an extension of time to respond to the motion for more definite statement. Dec. Order, ECF No. 34.

On January 15, 2026, Mrs. Wypy filed a third motion for extension of time to file a response to the motion to dismiss. Fourth Mot. for Ext. of Time, ECF No. 35.

On January 15, 2026, Mrs. Wypy also filed a second motion for extension of time to file a response to the motion for more definite statement. Fifth Mot. for Ext. of Time, ECF No. 36.

On January 20, 2026, the Court granted Mrs. Wypy's third motion for extension of time to respond to the motion to dismiss and her second motion for extension of time to respond to the motion for more definite statement. Jan. Order, ECF No. 37.

On February 25, 2026, Mrs. Wypy filed a third motion for extension of time to file a response to the motion for more definite statement. Sixth Mot. for Ext. of Time, ECF No. 39.

On February 25, 2026, Mrs. Wypy filed an objection in response to the motion to dismiss. Obj. to Mot. to Dismiss, ECF No. 40.

On February 27, 2026, the Court granted Mrs. Wypy's third motion for extension of time to respond to the motion for more definite statement. Feb. Order, ECF No. 41.

On March 12, 2026, Mrs. Wypy filed a motion to amend the Complaint. Mot. to Amend Compl., ECF No. 42.

On April 6, 2026, the Court granted Mr. Ciardiello's motion for extension of time to plead. Apr. Order, ECF No. 44.

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York*, 286 F.3d at 125 ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d

142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

Mr. Ciardiello moves to dismiss Mrs. Wypy's Complaint on three separate grounds.

First, he argues that claims brought under 42 U.S.C. § 1983 should be dismissed as to him because he is not a "state actor acting under color of state law". Mem. in Supp. of Mot. to Dismiss at 8. Next, Mr. Ciardiello argues that Mrs. Wypy fails to state a claim upon which relief can be granted. *Id.* at 12. Finally, Mr. Ciardiello argues that Mrs. Wypy's claims against him are barred by the litigation privilege. *Id.* at 15.

The Court will address each of the relevant federal claims, in turn, turn to the sufficiency of the pleadings as to Mr. Marino and Mr. Cota, and then address the state law claims, only to the extent necessary.

### A. The Federal Claims Against Mr. Ciardiello

"To state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999). "[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). For state action to be found the alleged conduct or deprivation of rights must be "fairly attributable to the [s]tate." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).

[T]he party charged with deprivation must be a person who may be fairly said to be a state actor. . . because he is a state official, because he has acted together with or has obtained significant

aid from state officials, or because his conduct is otherwise chargeable to the State." *Id.* The power or authority exercised to violate a person's rights must flow from the state or § 1983 is not applicable. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981) ([A] person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'") (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

A person need not be directly employed by the state to be deemed a state actor. *See e.g.*, *West v. Atkins*, 487 U.S. 42, 57 (1988) (holding that a physician contracted with the state to provide medical services but not directly employed by the state is a state actor for § 1983 purposes); *Betts v. Shearman*, 751 F.3d 78, 84–85 (2d Cir. 2014) (explaining that a private actor "acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents.") (quoting *Ciambriello v. Cnty of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *Dennis v. Sparks*, 449 U.S. 24, 28 (1980) (noting that "private parties conspiring" with state actors act under color of law when they do so). A private actor may be answerable under § 1983 for conspiring with state actors. A viable § 1983 conspiracy claim must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324–25.

Generally, attorneys who do not answer to the state and who maintain a strong level of independence from the state are not state actors. *See e.g.*, *Polk*, 454 U.S. at 318–324 (explaining that where a public defender "characteristically opposes" state authorities, takes on a role adverse to the state, represents her client's interests, and exercises "independent professional judgment" a finding that she has not acted under color of state law is appropriate.). This is especially true for private attorneys. Absent conspiracy or joint action with the state, "[a] private attorney

representing a client in either a civil or criminal action is not a state actor." *McArthur v. Bell*, 788 F. Supp. 706, 710 n.1 (E.D.N.Y. 1992). *See also Kaminski v. Semple*, 796 F. App'x 36, 39 (2d Cir. 2019) (finding that a private attorney hired by the Department of Corrections to assist incarcerated people was not a state actor because the state did not supervise or control him and he performed duties traditional counsel would perform.); *Szymonik v. Connecticut*, 807 F. App'x 97, 102 (2d Cir. 2020) (finding that plaintiff failed to state a § 1983 claim against a private attorney because the fact that he is licensed by the state does not make him a state actor, he performed traditional functions as private counsel, and their allegations failed to establish a conspiracy between the attorney and state actors.).

Mrs. Wypy alleges that Mr. Ciardiello has violated her Fourth, Fifth, and Fourteenth Amendment rights. Compl. ¶ 2(B).

Mr. Ciardiello argues that as to him, all claims under 42 U.S.C. § 1983 fail, because he is not a "state actor acting under color of state law." Mem. in Supp. of Mot. to Dismiss at 8.

The Court agrees.

Mr. Ciardiello's involvement in this case stems from his representation of Nutmeg Financial Holdings, LLC, formerly Ion Bank. Compl. ¶ 1. As a private individual, Mr. Ciardiello is subject to liability under 42 U.S.C. § 1983 if he violated Mrs. Wypy's rights while "clothed with the authority of the state." *Polk Cnty.*, 454 U.S. at 317–18 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

Mrs. Wypy does not allege that Mr. Ciardiello's actions on behalf of Nutmeg Financial Holdings, LLC, were made possible because he wielded state power. No action Mr. Ciardiello took to advance foreclosure proceedings was cloaked with state support or authority. All of Mr. Ciardiello's alleged actions – representing that the house was condemned in a hearing, negotiating

a lien resolution with city officials, and drafting a letter regarding the acceleration of the loan balance – were private actions. Mr. Ciardiello's private actions were made possible not by state power but by a private agreement; the mortgage and associated terms Mrs. Wypy agreed to in 2010. Compl. ¶ 2; Attach. to Compl. at 1–3; Foreclosure Action ¶ 3–6.

Mrs. Wypy also does not plausibly allege a conspiracy between Mr. Ciardiello and state actors. A conspiracy requires "an agreement between a state actor and a private party. . . to act in concert to inflict an unconstitutional injury." *Ciambriello*, 292 F.3d at 324–25. Mrs. Wypy alleges that Mr. Ciardiello represented that an "agreement" exists between the city and Nutmeg Holdings, LLC "that if the property was transferred" to new owners by strict foreclosure or foreclosure by sale, "the [c]ity would accept $5,000.00 in full satisfaction of its liens." Attach. to Compl. at 3. This alleged communication does not suggest an agreement to "inflict an unconstitutional injury." *Ciambriello*, 292 F.3d at 324–25. It reflects a proposed agreement between two parties to unencumber the title to the property. The agreement was based on a hypothetical transfer of ownership and does not impose infliction of a constitutional injury.

The factual allegations suggest Mr. Ciardiello is a private attorney, who performed the duties of private counsel, acting with total independence from the state and its actors, in a posture adverse to the City of Derby.[4] The factual allegations thus fail to allege a conspiracy between Mr. Ciardiello and Derby officials.

Accordingly, the motion to dismiss all claims under 42 U.S.C. § 1983 as to Mr. Ciardiello will be granted.

---

[4] Derby and Nutmeg Holdings, LLC have been adverse parties in litigation at least twice in cases regarding the Wypy property.

**B. The Federal Claims Against Mr. Cota and Mr. Marino**

Although Mr. Cota and Mr. Marino have not moved to dismiss the claims against them and instead have moved for the Court to order Mrs. Wypy to clarify the claims against them, the Court, even though it need not, will articulate the relevant constitutional principles as to any claims against the two of them.

As a preliminary matter, before discussing claims distinct to each of them, the Court addresses two other claims: (1) the Fifth Amendment claim; and (2) the 42 U.S.C. § 1986 claim.

While Mrs. Wypy alleges claims under the Fifth Amendment, her pleading currently contains no factual allegations regarding actions taken by the federal government. *See Ambrose v. City of N.Y.*, 623 F. Supp. 2d 454, 466 (S.D.N.Y. 2009)("Because Plaintiff's lawsuit does not allege any deprivation of his rights by the federal government, any due process claim he has against the City is properly brought under the Due Process Clause of the Fourteenth Amendment, not under that of the Fifth Amendment.") (quoting *Mitchell v. Home*, 377 F. Supp. 2d 361, 372–373 (S.D.N.Y. 2005). As a result, as currently pled, any claims brought under the Fifth Amendment would have to be dismissed.

42 U.S.C. § 1986 provides the vehicle for parties injured by the wrongs outlined in 42U.S.C. § 1985 to seek damages. 42 U.S.C. § 1986. But Section 1986 provides no substantive rights. *See Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978) ("Having failed to state a cause of action under s 1985, plaintiff has failed to state a claim under s 1986."). Section 1985 identifies three distinct offenses that amount to "[c]onspiracy to interfere with civil rights." 42 U.S.C. § 1985. All three offenses, preventing an officer from performing duties, obstruction of justice through intimidation, and the deprivation of rights or privileges require a conspiracy by two or more persons. *Id.*

Mrs. Wypy's § 1986 claim for the death of her husband currently fails because she does not state a claim under § 1985. She does not allege that two or more people conspired to deprive her of her rights or privileges under the law. In fact, she makes no allegation of any conspiracy at all. If, as the Court understands it, Mrs. Wypy brings her § 1986 claim based on a violation of § 1985(3), the claim is also insufficiently pleaded because Mrs. Wypy fails to allege that the conspirators were motivated by racial or "class-based" animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."). As a result, as currently pled, any claim brought under 42 U.S.C. § 1986 claim would have to be dismissed.

**1. The Claims Against Mr. Cota**

A § 1983 suit against a municipal officer in his official capacity is equivalent to a suit against the municipality itself. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ."); *Davis v. Stratton*, 360 F. App'x 182, 183 (2d Cir. 2010) (explaining that a suit against city officials in their official capacity is "essentially a suit against the [c]ity."); *Brandon v. Holt*, 469 U.S. 464, 471–472 (1985) (stating explicitly that a § 1983 suit against a public official in their official capacity "imposes liability on the entity that he represents.").

A municipality's policy and customs, rather than the isolated actions of individual officers, serve as the basis for a § 1983 claim.

> "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when

> execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."

*Monell*, 436 U.S. at 694. *See also Connick v. Thompson*, 536 U.S. 51, 60 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury.") (quoting *Monell* at 436 U.S. at 691); *Stratton*, 360 F. App'x at 183 ("[T]o obtain relief against the municipal officers, sued in their official capacity under 42 U.S.C. § 1983, he must show that there existed a municipal policy that was being enforced to deny him his constitutional rights."); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("A municipality may not be held liable in an action under 42 U.S.C. § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of *respondeat superior*."). A § 1983 plaintiff suing a municipality must plead and eventually prove "three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Id.* (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983)).

Mrs. Wypy has sued Andrew Cota in his official capacity, and alleges that Mr. Cota executed an administrative search warrant with police, hand-delivered an order to vacate, posted signs around the property deeming it unsafe, and inadvertently caused her electricity to be shut off which led to her inability to prove occupancy of the property. Attach. to Compl. Mrs. Wypy also alleges that Mr. Cota represented that "the issue of the lien would be brought before the Blight Committee" but to her knowledge it never was. *Id.* at 2. Mr. Cota allegedly "did not cause the necessary work to be completed to" make the house safe. *Id.* Ultimately Mrs. Wypy claims that Mr. Cota's actions led to the bank's decision to initiate a foreclosure action. *Id.* at 2–3.

While Mrs. Wypy makes a number of factual allegations against Mr. Cota, she fails to allege that the city's official policy or custom caused a denial of her constitutional rights. *Zahra*, 48 F.3d at 685 (quoting *Batista v. Rodriguez,* 702 F.2d at 397). Allegations of Mr. Cota's individual wrongdoing, without a plausible allegation that Mr. Cota's actions were part of a municipal policy or custom, are insufficient to state a claim for official capacity liability under 42 U.S.C. § 1983.

Accordingly, based on the current allegations against Mr. Cota, all claims under 42 U.S.C. § 1983 would have to be dismissed.

**2. The Claims Against Mr. Marino**

A suit brought against a state actor in his individual capacity under § 1983 imposes liability on the individual actor rather than his government employer. *See Kentucky v. Graham*, 473 U.S. 159, 167–168 (1985) ("[I]t is clear that a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity. A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him."). In an individual capacity suit a plaintiff must allege and ultimately prove "the defendant's direct or personal involvement in the actions which . . . caused the constitutional deprivation." *Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir. 1998) (citation modified).

Mrs. Wypy sues Mr. Marino in his individual capacity for violation of her constitutional right to due process. While Mrs. Wypy may allegedly have a protected property interest in her home, she fails to allege that Mr. Marino, through "direct or personal involvement" deprived her of her property interest in violation of the Fourteenth Amendment. *Spencer*, 139 F.3d at 112.

A Fourteenth Amendment "procedural due process claim involves a 'two-step inquiry' in which [the court] must determine '(1) whether [the plaintiff] possessed a liberty or property interest and, if so, (2) what process [ ] was due before [the plaintiff] could be deprived of that interest.'"

*Levin v. City of Buffalo*, 179 F.4th 132, 137 (2d Cir. 2026) (quoting *Ciambriello*, 292 F.3d at 313). Mrs. Wypy alleges that Mr. Marino deemed her home "condemned" during two hearings in January 2020. Mrs. Wypy does not allege that Mr. Marino interfered with her opportunity to be heard at the January 2020 hearings. She also does not allege that Mr. Marino stopped her from presenting evidence or otherwise rebutting his allegation that her home was condemned during the January 2020 hearings. Her allegations regarding the January 2020 hearings, as stated, are insufficient to show that Mr. Marino deprived her of procedural due process rights.

Mrs. Wypy does allege that a "meeting" before the "Blight Committee" in January 2020 was scheduled but that the meeting did not happen due to the COVID-19 pandemic. Attach. to Compl. at 2. It is unclear whether the "meeting" before the "Blight Committee" ever occurred. *Id.* Derby's city ordinance outlines the hearing procedure for citations issued against blighted properties. Derby, Conn., Ordinances ch. 60-6–60-11 (2014). A property owner who requests one is entitled to a hearing where they may contest liability and present evidence. *Id.* A hearing officer makes the final determination as to liability and provides the property owner a deadline to address the blighted condition. *Id.* Even assuming that this meeting or hearing was not held, Mrs. Wypy pleads no facts which suggest that Mr. Marino is responsible for the meeting's cancellation or that he otherwise deprived her of an opportunity to be heard. Put simply, there are no factual allegations that Mr. Marino's actions violated Mrs. Wypy's due process rights.

Accordingly, based on the current allegations against Mr. Marino, any Fourteenth Amendment due process claim brought under 42 U.S.C. § 1983 would have to be dismissed.

### C. The State Law Claims Against Mr. Ciardiello[5]

"[A] federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Indeed, "[t]he district court[ ] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Having dismissed all of the federal claims against Mr. Ciardiello, the Court is inclined to decline to exercise supplemental jurisdiction of any remaining state law claims against him, and instead would dismiss them without prejudice to refiling in Connecticut state court.

Accordingly, if Mrs. Wypy is unable to remedy the deficiencies identified in this Ruling and Order as to any of the federal claims brought against him or fails to do so timely, and the dismissal of the federal claims against him become dismissed with prejudice, the state law claims would be dismissed without prejudice to refiling in Connecticut state court.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**.

To the extent that the deficiencies described in this Ruling and Order can be remedied, Mrs. Wypy may seek leave to file a Second Amended Complaint by **October 30, 2026**.

If a motion for leave to file a Second Amended Complaint is not filed by **October 30, 2026**, or that deadline is not otherwise extended by further order of this Court, then the claims against Mr. Ciardiello will be dismissed with prejudice, although the claims against Mr. Cota and Mr. Marino shall remain.

---

[5] Given the current procedural posture of this case, the Court need not and does not address the state law claims brought against Mr. Cota and Mr. Marino.

**SO ORDERED** at New Haven, Connecticut, this 29th day of September, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE